UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GLEN SCHOOLEY,

    Plaintiff,

v.                                                                  Case No. 5:21-cv-219-AW/MJF

OPTION ONE MORTGAGE
CORPORATION, a/k/a, SAND
CANYON CORPORATION, *et al.*,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Glen Schooley's claims arise from a mortgage originated and serviced by Defendant Sand Canyon Corporation ("SCC"), which formerly was known as "Option One Mortgage Corporation."[1] The mortgage identifies Defendants Linda Flowers and Sharon Cason, along with Schooley, as "mortgagors." At some point, Schooley "defaulted" on the mortgage. In his third amended complaint, Schooley asserts that SCC violated several federal laws in servicing the mortgage.

---

[1] Schooley alleges that Option One Mortgage Corporation ("OOMC") changed its name to "Sand Canyon Corporation" in 2008. Doc. 24 at 3 ¶ 12. Throughout his third amended complaint, Schooley refers to OOMC and SCC interchangeably. In this report and recommendation, the undersigned refers to Defendant as "SCC."

Page 1 of 19

SCC moved to dismiss Schooley's claims for failure to state a claim upon which relief can be granted. Doc. 28. Schooley responded in opposition.[2] Doc. 30. Because Schooley fails to state a plausible claim for relief against SCC, the District Court should grant SCC's motion to dismiss and should deny Schooley leave to file a fourth amended complaint.

## I. BACKGROUND

Schooley's factual allegations are convoluted. The following is the undersigned's best effort to understand and summarize the substance of those allegations.

On November 10, 2006, Schooley executed a mortgage with SCC for property located at 1400 Grant Rd., Ponce De Leon, Florida 32455-6281. Doc. 24-1 at 2-11. Although Flowers, Cason, Schooley, and another individual ("Sheiman") are listed as "mortgagors" on the first page of the mortgage, only Schooley and Sheiman are identified later as "borrowers." *Id.* at 9, 11. Flowers and Cason are identified as "witnesses," and Flowers notarized the mortgage. *Id.* at 9.

---

[2] To the extent his response raises arguments not included in his third amended complaint, the undersigned did not consider those arguments in this report and recommendation. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (noting that courts "[o]rdinarily . . . do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss"); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that a plaintiff cannot raise a claim for the first time in a response to a dispositive motion).

On July 16, 2019, SCC assigned the mortgage to Wells Fargo Bank, N.A., "as trustee for Option One Mortgage Loan Trust 2007-FXD2." *Id.* at 14-15. Schooley contends that the assignment was "fraudulently prepared and executed . . ., making the [assignment] a forgery and void ab initio." Doc. 24 at 9 ¶ 47. He also contends that the mortgage is void for three reasons: (1) the mortgage became a "nullity" when SCC assigned the mortgage without the note; (2) the mortgage was assigned into a "closed trust"; and (3) "fraud, criminal billing practices, unfair trade practices and felonious misconduct in loan servicing." *Id.* at 10-11 ¶¶ 51-52, 56 (errors in original).

At some point, Schooley "default[ed]" on the mortgage. *See id.* at 5, 23 ¶¶ 18-19, 111. SCC then allegedly "demanded" that Schooley execute a loan modification, which "falsely stat[ed]" that he "was part of a 'trust'" and "was intend[ed] to circumvent" Florida's probate laws. *Id.* at 5-6 ¶¶ 19-24. Schooley also alleges that by "improperly" and "fraudulently" imposing "fees and costs" on him, SCC breached the mortgage agreement. *Id.* at 11 ¶ 55. According to Schooley:

> [SCC] never had standing to collect or enforce the subject satisfied and voided mortgage because they were in violation of their own governing documents, and were operating illegally and convicted by the State of New York, voided the mortgage when it separated from the note and further voided it when it securitized the same into a closed Option One trust and collected payment in full from CIFG and did not credit the same to the borrowers account.

Doc. 24 at 11 ¶ 56 (errors in original). He further alleges that "THE MORTGAGE IS PAID IN FULL AS THE MORTGAGE PAYMENT INSURANCE OR BOND

FROM CIFG ASSURANCE WAS COLLECTED BY THE DEFENDANT AND SATISFIED THE MORTGAGE IN FULL." *Id.* at 7 ¶ 37 (emphasis in original).

Schooley attributes to SCC a "funding scheme" in which "sub-prime mortgages" are bundled and "securitized into a closed trust." Doc. 24 at 8 ¶¶ 38-39. According to Schooley, the "trust then issues RMBS to the investors, and at the same time, insures those mortgages through, in this case, CIFG Assurance, who issued bonds which pay the mortgage off if the borrower defaults." *Id.* ¶ 40 (errors in original). Schooley contends that the servicer then puts "the borrower into default," and "does not credit the payment of those mortgages to the borrower." *Id.* ¶ 43. Instead, SCC purportedly "continues to add fraudulent charges," and "impose fees and costs which are neither due nor owing and forecloses on the property, selling it and keeping the proceeds from the sale, since the trust has already been paid in full from CIFG Assurance." *Id.* (errors in original); *see id.* at 4-5, 12-13 ¶¶ 18, 59-65.

Schooley also contends that someone by the name of "Joe A. Simmons"—"a notorious forger and robo-signer"—is the "likely . . . mastermind behind this scheme and artifice to defraud" because Simmons "worked in all three companies, the trust, the servicer and even worked at the Assurance Company." Doc. 24 at 7-8, 10 ¶¶ 33, 44, 50.

Schooley asserts that SCC violated the Consumer Financial Protection Act ("CFPA") and the Fair Debt Collection Practices Act ("FDCPA").[3] *Id.* at 13-18, 19-23. Additionally, he asserts against SCC a quiet-title claim, presumably under Florida law,[4] although Schooley does not specify this. *Id.* at 18-19. Furthermore, Schooley asserts a "Violation of Federal Deceptive Trade Practices Act." *Id.* at 19-21. In the allegations offered in support of this claim, Schooley cites 12 U.S.C. §§ 5531 and 5536, and mentions the CFPA. *Id.* at 19, 21 ¶¶ 94, 100. In his response to SCC's motion to dismiss, Schooley confirms that this is a CFPA claim and "stipulates to striking" this claim because he "accidentally" included it in his third amended complaint. In light of this concession, the undersigned does not address this abandoned claim in this report and recommendation.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes defendants to move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a claim to survive dismissal, the "complaint must contain

---

[3] Schooley attempts to separate his FDCPA claim into two claims. *Compare* Doc. 24 at 17-18, *with id.* at 21-23. The undersigned addresses the claims together because they are essentially one claim.

[4] The mortgage, which Schooley attached to his third amended complaint, states that it is "governed by federal law and the law of the jurisdiction in which the Property is located." Doc. 24-1 at 6 ¶ 15. Because the property at issue is located in Florida, Florida law governs Schooley's quiet-title claim.

sufficient factual matter, accepted as true," to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations that merely suggest the possibility that the defendant acted unlawfully are insufficient; the allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678 (reiterating that Federal Rule of Civil Procedure 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

When evaluating a claim's plausibility, courts accept all well-pleaded factual allegations of the complaint as true and evaluate all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted). Courts also "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But courts "cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (citation omitted).

### III. DISCUSSION

A.  <u>**Schooley Fails to Allege a Plausible Claim Under the CFPA**</u>

Schooley alleges that SCC violated the CFPA by representing in the mortgage documents that all mortgage payments "would be credited to his account" and by "fail[ing] to report the satisfaction of the mortgage by the third party PMI or bond from CIFG Assurance Corporation or other similar guarantor." Doc. 24 at 14 ¶¶ 72-73 (errors in original). SCC moves to dismiss this claim because Congress did not authorize a private cause of action in the CFPA. Doc. 28 at 5-6.

The CFPA empowers the Consumer Financial Protection Bureau and state attorneys general "to prevent a . . . service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." 12 U.S.C. § 5531(a); *see id.* § 5552(a).

The CFPA does not, however, create a private cause of action. *Schneider v. Credit Hum. Fed. Credit Union*, No. 4:20-cv-1747, 2022 WL 971464, at *3 (N.D. Ohio Mar. 31, 2022); *McMillan v. Nationstar Mortg. Co.*, No. 20-1321, 2020 WL 4201605, at *3 (E.D. Pa. July 22, 2020); *Ford v. Bass & Assocs., P.C.*, No. 5:19-cv-159-TES, 2019 WL 5196386, at *2 n.3 (M.D. Ga. Oct. 15, 2019); *Mayall v. Randall Firm, PLLC*, No. 1:13-cv-166-TC, 2017 WL 3432033, at *2 (D. Utah Aug. 9, 2017);

*Tillman v. air Autovest, LLC*, No. 2:16-cv-211-RDP, 2016 WL 4379455, at *7 (N.D. Ala. Aug. 17, 2016) (collecting cases); *Gingras v. Rosette*, No. 5:15-cv-101, 2016 WL 2932163, at *22 (D. Vt. May 18, 2016); *Beider v. Retrieval Masters Creditors Bureau, Inc.*, 146 F. Supp. 3d 465, 472 (E.D.N.Y. 2015).

In an effort to overcome this problem, Schooley alleges that he is asserting his CFPA claim "under the Private Attorney General statutes permitting him to enforce Sections 1054 and 1055" of the CFPA. Doc. 24 at 13 ¶ 69. But Schooley fails to identify the "Private Attorney General statutes" that purportedly enable him to assert a claim under the CFPA, and the undersigned is not aware of any such statute. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979). Here, Congress has not authorized private actions for violations of the CFPA. Accordingly, the District Court should dismiss Schooley's CFPA claim.

B.   **Schooley Fails to Allege a Plausible Claim Under the FDCPA**

Schooley next asserts that SCC violated the FDCPA by "refus[ing] to credit payments [it] received from third parties, including CIFG Assurance, PMI carriers and third parties who satisfied the mortgage and then [SCC] continued to collect on

the already satisfied mortgage."[5] Doc. 24 at 18, 22 ¶¶ 84, 105-07 (errors in original). SCC moves to dismiss this claim because Schooley fails to plausibly allege that SCC is a "debt collector" under the FDCPA. Doc. 28 at 8-9.

The FDCPA prohibits "debt collectors" from using "abusive, deceptive, and unfair debt collection practices." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1257 (11th Cir. 2014) (quoting 15 U.S.C. § 1692(a)); *see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). To prevail on an FDCPA claim, a plaintiff ultimately must prove, among other things, that the defendant is a "debt collector." *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012).

A "debt collector," as defined by the FDCPA, is "anyone whose principal business is the collection of debts or the enforcement of security instruments or anyone who regularly attempts to collect debts owed to another." *Saint Vil v. Perimeter Mortg. Funding Corp.*, 630 F. App'x 928, 930 (11th Cir. 2015) (citing 15 U.S.C. § 1692a(6)). The term expressly excludes "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15

---

[5] In a parenthetical under this claim's heading, Schooley cites several federal statutes and regulations, including the Real Estate Settlement Procedures Act and the Truth in Lending Act. Doc. 24 at 17. To the extent that Schooley intended to assert claims under these statutes, he failed to support such claims with factual allegations.

U.S.C. § 1692a(6)(A); *see id.* § 1692a(4) (defining a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed"); *see Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017) (noting that an entity must "attempt to collect debts owed *another* before [it] can ever qualify as a debt collector"). Thus, the FDCPA typically applies "only to professional debt-collectors." *Crawford*, 758 F.3d at 1258 n.3; *Davidson v. Cap. One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015).

At the motion-to-dismiss stage, a plaintiff "must plausibly allege sufficient factual content to enable the court to draw a reasonable inference that [the defendant] meets the FDCPA's definition of 'debt collector' and is thus subject to the [FDCPA]." *Kurtzman v. Nationstar Mortg. LLC*, 709 F. App'x 655, 658-59 (11th Cir. 2017).

Schooley contends that SCC is a "debt collector because [SCC] purportedly acquired [Schooley's] mortgage when it was already claimed to be in arrears." Doc. 24 at 18 ¶ 84; *see id.* at 23 ¶ 111. The mortgage that Schooley attached to his third amended complaint, however, indicates that SCC originated and serviced the mortgage, not that SCC acquired Schooley's mortgage. Doc. 24-1 at 2-11; *see Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (noting that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern") (citation omitted).

Because SCC is the originator and servicer of the mortgage, and Schooley's debt was owed to SCC, in Schooley's case SCC it is not a "debt collector" as that term is defined by the FDCPA. *See* 15 U.S.C. § 1692a(4); *see also Ladouceur v. Wells Fargo*, 682 F. App'x 649, 652 (10th Cir. 2017) (holding that a mortgage company was not a "debt collector" because it was collecting on debts that it originated and serviced); *Summerlin v. Shellpoint Mortg. Servs.*, 165 F. Supp. 3d 1099, 1113 (N.D. Ala. 2016) (noting that the defendant "assuming the mortgage debt one year before instituting foreclosure . . . reasonably suggest[ed]" that the defendant's business was "not primarily to collect a debt but rather to service a mortgage").

In an effort to overcome this problem, Schooley alleges that SCC is a "debt collector" because it "acquires servicing rights to *some* mortgages that are in default at the time of transfer and proceeds to collect on those mortgages." Doc. 24 at 23 ¶ 112; *see* Doc. 30 at 5, 17. Schooley does not elaborate as to what he means by "some." This conclusory assertion without any factual support simply is insufficient to plausibly suggest that SCC is a "professional debt-collector."[6] *Crawford*, 758 F.3d

---

[6] In his response, Schooley contends that the "case law has already found [SCC] to be debt collectors. See, for example, *Sand Canyon Corporation F/K/A Option One Mortgage*, **N11L-10-127 | Delaware State, Superior Court, New Castle County.**" Doc. 30 at 2-3 (emphasis and errors in original). Despite a diligent search, the undersigned was unable to locate the purported case.

at 1258 n.3. In any event, as discussed above, SCC is the originator of Schooley's mortgage. The fact that SCC may have been a debt collector with respect to other mortgages, therefore, does not help Schooley.

Because Schooley fails to allege plausibly that SCC is a "debt collector" under the FDCPA, the District Court should dismiss Schooley's FDCPA claim.

C. **Schooley Fails to Allege a Plausible Claim to Quiet Title**

Schooley also asserts a claim to quiet title. Doc. 24 at 18-19. SCC moves to dismiss this claim because Schooley fails to allege a plausible claim for relief. Doc. 28 at 6-7.

Under Florida law, a claim to quiet title "must not only show title in the plaintiff to the lands in controversy, but also that a cloud exists." *Lane v. Guar. Bank*, 552 F. App'x 934, 937 (11th Cir. 2014) (quoting *Stark v. Frayer*, 67 So. 2d 237, 239 (Fla. 1953)); *Woodruff v. Taylor*, 118 So. 2d 822, 822 (Fla. Dist. Ct. App. 1960). That is, the plaintiff must allege that (1) he has valid title, (2) "there is a cloud on that title," and (3) "the cloud is invalid." *Rodriquez v. Bank of Am., N.A.*, 49 F. Supp. 3d 1154, 1159 (S.D. Fla. 2014) (citation omitted). "Generally, a note or mortgage

---

Furthermore, the fact that an entity qualifies as a "debt collector" for purposes of the FDCPA in one case does not mean that it operated as a "debt collector" in all cases. *See Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003); *Hallback v. Carrington Mortg. Servs., LLC*, No. 8:21-cv-1028-WFJ-SPF, 2022 WL 685663, at *6 (M.D. Fla. Mar. 8, 2022); *see also Ladouceur*, 682 F. App'x at 652; *Davidson*, 797 F.3d at 1313.

remains a valid and enforceable lien against property, and does not, as a matter of law, constitute a cloud on the property supporting a quiet title claim." *Dixon v. Green Tree Servicing, LLC*, No. 19-80022-CIV, 2019 WL 2866495, at *13 (S.D. Fla. July 3, 2019) (citation omitted); *2010-3 SFR Venture, LLC v. Garcia*, 149 So. 3d 123, 125 (Fla. Dist. Ct. App. 2014).

Schooley contends that as a result of SCC's alleged "misconduct," he is entitled to "a judicial declaration" that SCC "has been paid in full from third parties, PMI, and collection of bonds[]voided the mortgage when [SCC] separated the mortgage from the note." Doc. 24 at 18 ¶ 87 (errors in original); *see* Doc. 30 at 11-17. But the mortgage on Schooley's property is not invalid simply because SCC assigned the mortgage without assigning the note. *Altier v. Fed. Nat'l Mortg. Ass'n*, No. 1:13-cv-164-MW/GRJ, 2013 WL 6388521, at *4 (N.D. Fla. Dec. 6, 2013) (dismissing the plaintiffs' claim to quiet title because the act of assigning a mortgage without assigning the note does not invalidate the mortgage); *Roder v. RH Funding Co.*, No. 6:12-cv-1076-Orl-36, 2012 WL 6799690, at *3 (M.D. Fla. Dec. 10, 2012). Such an assignment of the mortgage simply precludes the assignee from enforcing the note. *Bristol v. Wells Fargo Bank, Nat'l Ass'n*, 137 So. 3d 1130, 1133 (Fla. Dist. Ct. App. 2014); *Sobel v. Mut. Dev., Inc.*, 313 So. 2d 77, 78 (Fla. Dist. Ct. App. 1975).

Thus, Schooley fails to plausibly allege two essential elements of a claim to quiet title: (1) that there is a cloud on his title, and (2) that the cloud is invalid.[7]

Schooley also requests a "judicial declaration" that "this is a historic pandemic" and that the mortgage is void due to force majeure and "illegality, since it was made illegal to work and [he] needed to stay home or be in direct violation of the law and could not work to earn money to pay the mortgage and therefore payment of the mortgage is forever excused." Doc. 24 at 19 ¶¶ 88-89 (errors in original).

Presumably Schooley is referring to the COVID-19 pandemic. Regardless, Schooley's requests have no relation to his quiet-title claim, and they certainly do not overcome his failure to allege two essential elements of that claim. Furthermore, Schooley provides no factual support for these assertions and does not identify any law that would authorize the District Court to cancel Schooley's mortgage "forever."

Because Schooley fails to allege plausibly two essential elements of a quiet-title claim, the District Court should dismiss this claim.

D.     **The District Court Should Deny the Conditional Request to Amend**

In his response to SCC's motion to dismiss, Schooley makes a conditional request to amend his third amended complaint. Specifically, he requests leave to

---

[7] In his response, Schooley appears to allege that SCC foreclosed on the property at issue. Doc. 30 at 6-7. These allegations appear to contradict Schooley's previous contention that SCC *has not foreclosed* on the property. *E.g.*, Doc. 24 at 7 ¶ 34. Regardless, these inconsistencies do not affect the undersigned's recommendations contained herein.

amend only "if the court finds any defects in the pleadings." Doc. 30 at 1; *id.* at 18. For three independent reasons set forth below, the District Court should deny Schooley's conditional request to file a fourth amended complaint.

### 1.     *Schooley's Conditional Request Is Deficient*

A "request for a court order must be made by motion," which must "state with particularity the grounds for seeking the order" and "state the relief sought." Fed. R. Civ. P. 7(b)(1). A motion for leave to amend, therefore, should set forth the proposed amendment or discuss its substance. *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) (affirming a district court's denial of the plaintiff's request for leave to amend in part because the request did not contain the proposed amendment or "elaborate" on its substance); *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (per curiam).

The Local Rules of the United States District Court for the Northern District of Florida specifically require that a party seeking leave to amend his complaint "simultaneously file the proposed amended pleading itself." N.D. Fla. Loc. R. 15.1(B). "[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (quotation omitted).

If Schooley truly believed that he could state a claim upon which relief can be granted, he could have—consistent with the Local Rules—filed a fourth amendment complaint and a motion for leave to file an amended complaint. N.D. Fla. Loc. R. 15.1(B). Schooley failed to take either of these steps. He also does not indicate the claims he would pursue in his theoretical fourth amended complaint or how his theoretical fourth amended complaint differs from his third amended complaint. Thus, Schooley fails to properly raise his request for leave to amend. *Cita Tr. Co. AG*, 879 F.3d at 1157.

For these reasons alone, the District Court should deny Schooley's conditional request to file a fourth amended complaint. *See Avena*, 740 F. App'x at 683; *Long*, 181 F.3d at 1279.

### 2. *Schooley Repeatedly Failed to Cure Deficiencies in His Complaints*

Because Schooley already has amended his complaint as a matter of course—indeed, the operative pleading is his third amended complaint—Schooley must seek leave from the court to file another amended complaint. Fed. R. Civ. P. 15(a)(1)-(2). As the party seeking leave to amend, Schooley bears the burden of establishing entitlement to such leave. *See In re Engle Cases*, 767 F.3d 1082, 1119 n.37 (11th Cir. 2014).

A court should deny leave to amend when a plaintiff repeatedly has failed to cure deficiencies through amendment. *Blackburn v. Shire US Inc*, 18 F.4th 1310,

1317-18 (11th Cir. 2021) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see Skyles v. McCoy*, 730 F. App'x 769, 771 (11th Cir. 2018) (holding that the district court did not abuse its discretion by denying leave to amend when the plaintiff previously failed to correct deficiencies in her complaint).

Schooley has had three opportunities to file an amended complaint. Docs. 9, 11, 24. Most recently, Schooley had an opportunity to file a third amended complaint *after he had the benefit of reviewing SCC's first motion to dismiss and the undersigned's order identifying deficiencies in Schooley's second amended complaint*. Docs. 16, 23. In the order granting Schooley leave to file a third amended complaint, the undersigned detailed why Schooley failed to state a plausible CFPA claim, FDCPA claim, and quiet-title claim. Doc. 23 at 7-13. Despite having the benefit of the undersigned's detailed order and SCC's first motion to dismiss, Schooley filed a deficient amended complaint. Because Schooley repeatedly has failed to cure deficiencies in his complaints, the District Court should deny Schooley's conditional request to file a fourth amended complaint.

### 3. *Amendment Would Be Futile*

A court also should deny leave to amend under Rule 15 when an amendment would be futile. *In re Engle Cases*, 767 F.3d at 1108-09; *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1344 (11th Cir. 2014). An amendment can be considered futile when a plaintiff provides no reason for a district court to conclude

that the plaintiff "could offer sufficient allegations to make a claim for relief plausible on its face." *Patel v. Ga. Dep't BHDD*, 485 F. App'x 982, 983 (11th Cir. 2012) (citations omitted).

Schooley's third amended complaint and response in opposition do not suggest that he can state a facially plausible claim under any of the causes of action discussed above. For example, as demonstrated above, the CFPA does not even create a private cause of action. Additionally, Schooley fails to provide any additional factual allegations which suggest that SCC is a "debt collector" under the FDCPA. Finally, his claim to quiet title borders on frivolity, and stating additional facts would not change that.

Because granting Schooley leave to amend would be futile, for this third independent reason, the District Court should deny Schooley's conditional request to file a fourth amended complaint.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1. **GRANT** SCC's motion to dismiss, Doc. 28, and **DISMISS** with prejudice Schooley's claims against SCC.

2. **DENY** Schooley's conditional request to file a fourth amended complaint.

3.      Recommit this case to the undersigned to address Schooley's remaining claims against Defendants Flowers and Cason.

At Pensacola, Florida, this 7th day of September, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address all preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2(E);** *see also* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**